IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CALVIN CANNADY                                                           PLAINTIFF

v.                                                     CIVIL ACTION NO. 1:15-cv-00044-GHD-JMV

CLAY COUNTY, MISSISSIPPI and
SHERIFF EDDIE SCOTT                                           DEFENDANTS

## OPINION

The Court conducted a bench trial on October 16 and 17, 2017, to adjudicate the parties' dispute concerning the Plaintiff Calvin Cannady ("Plaintiff")'s pretrial detention in Defendant Clay County, Mississippi ("Clay County") on a burglary charge that was ultimately dismissed. Upon careful consideration of the testimony and exhibits presented at trial, as well as the parties' pre- and post-trial submissions, the Court finds that the Plaintiff has not established his claims and that the Defendants are thus entitled to judgment in their favor as to all claims. The following constitutes the findings of fact and conclusions of law reached by this Court pursuant to Rule 52 of the Federal Rules of Civil Procedure:

### A. *Findings of Fact*

On October 10, 2011, Plaintiff was indicted in Clay County on a burglary charge. (Trial Exh. P-9). He was then arrested on March 16, 2012, posted bail in the Municipal Court of West Point, Mississippi, and was released on bond until the first day of the Circuit Court of Clay County's July 2012 term of court, when he was required to appear for arraignment. (Trial Exhs. P-9, D-9). On that date, July 9, 2012, Plaintiff appeared in the Circuit Court of Clay County and waived arraignment, had his appearance bail for trial set, entered a plea of not guilty on the burglary charge, and was released on bond until the first day of the Circuit Court of Clay County's October 2012 term of court, when he was required to appear for trial. (Trial Exhs. D-10 through

1

D-13). Jeff Hosford, an attorney from West Point, Mississippi, and a public defender for Clay County, was appointed as Plaintiff's attorney that day as well. (Trial Transcript (hereinafter "TT") at 172-176; Trial Exhs. D-11 and D-12). On that same day, the Circuit Court of Clay County also formally set the Plaintiff's criminal case for trial on October 10, 2012. (TT. 174-75; Trial Exh. D-12). Finally, Plaintiff signed two separate acknowledgements that day affirming the appointment of counsel on his behalf and acknowledging his trial date and that he would be jailed and his bond revoked if he failed to appear for the first day of the October 2012 term of court, *i.e.*, on October 9, 2012. (TT. 172-176; Trial Exhs. D-9 through D-14). In other words, Plaintiff plainly acknowledged in multiple court orders and documents that he understood and agreed that he was being released on bond and that his failure to appear in the Circuit Court of Clay County on October 9, 2012, would result in him being jailed and that his bond would be revoked.

Nevertheless, on October 9, 2012, Plaintiff failed to appear for the first day of the Circuit Court of Clay County's court term; he then also failed to appear for his trial the next day, October 10, 2012. (TT. 121). After Plaintiff failed to appear, Circuit Court Judge Lee Coleman entered a Bench Warrant directing Plaintiff's arrest for his having failed to properly appear on his appearance bond. (TT. 121-124; Trial Exh. P-1). At the hearing prior to the entry of the bench warrant, Plaintiff's counsel, Jeff Hosford, who was present in court that day on the Plaintiff's behalf, told the court that he had been unable to make contact with Plaintiff. (TT. 132-33; Trial Exh. D-16).

On October 29, 2012, the Flowood, Mississippi, Police Department arrested and detained Plaintiff at the Rankin County jail pursuant to the bench warrant. Subsequently, on November 9, 2012, Plaintiff was picked up at the Rankin County jail and transported to the Clay County Jail. (Trial Exh. P-16). Plaintiff's case was then placed on the January 2013 criminal docket, which

was the next term of court in the Circuit Court of Clay County. (TT. 71-75, 78; Trial Exhs. D-4 and D-5).[1]

The only means, outside a normal term of court, for an indicted criminal defendant to get out of jail after he has been arrested pursuant to a bench warrant for failure to appear for trial is for the criminal defendant's counsel to request and notice a hearing before the appropriate judge, a process which was available to Plaintiff had his counsel pursued it. (TT. 48). More specifically, Judge Coleman testified that in order for Plaintiff to appear in court before the next term of circuit court in Clay County, Plaintiff's counsel would have had to properly file and notice a motion and set the motion for hearing to come before Judge Coleman in another county, during that county's term of court. (TT. 125-26, 135). In the end, Plaintiff's criminal case was brought before the Circuit Court of Clay County in a timely manner and was continued through the January, April and July 2013 terms of court after requests by Plaintiff's counsel and through no action on the part of Clay County or Clay County Sheriff Eddie Scott ("Sheriff Scott") (collectively, "Defendants").[2]

Plaintiff was represented by appointed counsel at all times during his incarceration and throughout his criminal case. Plaintiff's first attorney was Jeff Hosford, who was the public defender appointed to represent Plaintiff on July 9, 2012, and who appeared on Plaintiff's behalf at arraignment and at the originally scheduled first day of trial in October 2012. (TT. 144). Hosford was replaced by Mark Cliett as the public defender effective January 1, 2013, prior to the Circuit Court of Clay County's January 2013 term of court, at which time Cliett became Plaintiff's

---

[1] The Circuit Court of Clay County has four separate criminal terms of court each year. Those terms take place in the months of January, April, July and October. After the October 2012 term, the next term of court was in January 2013 and this was the first opportunity for Plaintiff's case to be called in court absent some particular request and notice of hearing from Plaintiff's counsel. (TT. 98-99, 109, 124-26).

[2] As discussed in more detail below, the return on Plaintiff's bench warrant was not filed by Sheriff Scott with the Circuit Court of Clay County until January 15, 2013, approximately two months after the bench warrant was executed. It is clear, however, that the untimely filing of the bench warrant did not cause any delays whatsoever in Plaintiff's criminal case. (see, e.g., TT. 98-99).

3

attorney. (TT. 128, 184). This substitution of attorneys led to Plaintiff's case being continued from the January 2013 term to the April 2013 term, through no fault of Defendants. (TT. 189). Plaintiff testified that he was aware that Hosford and then Cliett were his attorneys, and that he in fact made numerous attempts to contact Cliett in early 2013. (TT. 146-47, 169-70). According to Plaintiff, he then learned on the day of his potential trial in April 2013 that Cliett could not represent Plaintiff due to a conflict of interest. (TT. 147). Cliett, for his part, testified regarding his replacement of Hosford and the difficult time he had obtaining the criminal files, including Plaintiff's file, from Hosford (which was no fault of the Defendants). (TT 184-85). Once Cliett received Plaintiff's file from Hosford, after the January 2013 term but prior to the April 2013 term of court, Cliett recognized he had a conflict of interest because he as a Municipal Court Judge had set Plaintiff's initial bail amount in the West Point Municipal Court in early 2012, and thus he formally withdrew as Plaintiff's counsel on April 4, 2013. (TT. 189-90; Trial Exh. P-5).[3] This switch in attorneys, along with delays in receiving the Plaintiff's criminal file and the issue of Cliett's conflict, were the reasons for the criminal case delays and continuances in Plaintiff's case through the April 2013 term. Neither Sheriff Scott nor Clay County had anything to do with those delays or continuance orders. (TT. 190-191)

As part of Cliett's withdrawal, Austin Vollor was appointed Plaintiff's counsel on April 5, 2013. (TT. 107). Plaintiff's case was then continued through the next two terms of court, both the April 2013 and July 2013 terms, due to motions for continuance that Vollor, as Plaintiff's counsel, filed on Plaintiff's behalf. (TT. 107-08; Trial Exhs. D-2 and D-3). Neither Sheriff Scott nor Clay County had any role in the case being continued on either occasion. Specifically, in the order entered on April 5, 2013, which continued the Plaintiff's trial until July 8, 2013, Vollor stated

---

[3] In Mississippi, criminal defendants primarily make their initial court appearance, including for the setting of bail, before a Justice Court Judge or before a Municipal Court Judge.

4

he needed time for investigation; in the next order of continuance, entered during the July 2013 term of court, the court noted that pretrial issues were still pending and the case was thus being continued until October 14, 2013. (Trial Exhs. D-2 and D-3). The burglary charge brought against Plaintiff was ultimately dismissed on October 14, 2013, by an Order of *Nolle Prosse* "based upon the fact that the State is unable to locate a material witness . . . and cannot meet its burden without said witness" and Plaintiff was released from custody. (Trial Exh. P-8).

Plaintiff has now asserted claims under 42 U.S.C. § 1983 for violations of his due process rights under the Fourteenth Amendment and violations of his right to a speedy trial under the Sixth Amendment against Defendants Clay County and Sheriff Scott. (TT. at 142-43). He also asserts a state law negligence claim against Sheriff Scott for his alleged failure to bring Plaintiff before a judicial officer in a timely manner. (TT. 142-43).

### B. Conclusions of Law

#### 1. Standard for Municipal Liability Against Clay County.

As for Plaintiff's claims against Clay County, in order to establish municipal or county liability under Section 1983, Plaintiff must demonstrate: (1) the existence of an official policy or custom; (2) of which the policymaker may be charged with knowledge; (3) that is the moving force behind the constitutional violation. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Plaintiff asserts that, because Sheriff Scott is an official policy maker for Clay County, his office's alleged failures here create liability for Clay County.

#### 2. Standard for Qualified Immunity for Sheriff Scott.

Sheriff Scott has asserted that he is protected from liability by the doctrine of qualified immunity. "[Q]ualified immunity serves to shield ... government officials from civil liability for damages based upon the performance of discretionary functions if the official's acts were

objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001); see *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.") (quoting *Mace v. City of Palestine, Tex.*, 333 F.3d 621, 623 (5th Cir. 2003)). Qualified immunity calls for a bifurcated test in which the court must first determine (1) "whether the plaintiff has alleged a violation of a clearly established statutory or constitutional right and, if so, (2) whether the defendant [official's] conduct was objectively unreasonable." *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.' " *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Id.* (citing *Brown*, 623 F.3d at 253).

### 3. Plaintiff's Fourteenth Amendment Claim.

First, Plaintiff has asserted a claim under the Fourteenth Amendment for violation of his due process rights in connection with his incarceration awaiting trial on the burglary charge. He asserts this claim against both Clay County and Sheriff Scott.

Plaintiff cites and seeks to primarily rely on the very recent Fifth Circuit decision of *Jauch v. Choctaw County and Sheriff Cloyd Halford*, No. 16-60690, 2017 WL 4783016 (5th Cir. Oct. 24, 2017) to support his Fourteenth Amendment claim. In *Jauch*, the Fifth Circuit found that a sheriff and county who detained a pretrial defendant for 96 days, until the next term of court, without an arraignment or setting of bond or other court proceeding or appointment of counsel violated the Fourteenth Amendment and created county liability. *Jauch*, 2017 WL 4783016, at *5. The Fifth Circuit found that Choctaw County's indefinite delay in permitting a criminal defendant to have a court appearance after being picked up on an arrest warrant, without bond or counsel being

6

appointed, violated due process. *Id.* (holding "indefinite pre-trial detention without an arraignment or other court appearance [violates due process]" and "prolonged detention without the benefit of a court appearance violates the detainee's Fourteenth Amendment right to due process.")

The factual differences between what transpired in *Jauch* and what happened in the case *sub judice* are significant. In *Jauch*, the county had a policy of indefinitely holding criminal defendants on arrest warrants <u>without</u> an arraignment <u>or</u> other court proceeding <u>or</u> setting of bond <u>or</u> appointment of counsel until the court that issued the warrant next convened, i.e., the next term of court in that county. *Jauch*, 2017 WL 4783016, at * 7. Jauch herself was indicted by a grand jury, arrested and put in jail -- where she waited for 96 days before being brought before a judge, arraigned, appointed counsel, or having a bond hearing regarding the setting of bail. *Jauch*, 2017 WL 4783016, at *1.

Here, Plaintiff's situation and the process he was afforded was worlds away from what Jauch faced, and these differences are fatal to Plaintiff's due process claims. Specifically, unlike Jauch, Plaintiff did appear in court for his arraignment (and he waived formal arraignment), was appointed counsel, had his case set for trial, and posted bail and had been released, all prior to his detention for failure to appear for trial, and all process that Jauch was not afforded in Choctaw County. Moreover, unlike Jauch, Plaintiff was represented by counsel, and his counsel actively filed motions on Plaintiff's behalf throughout his incarceration, including several motions to continue Plaintiff's trial date.[4] (Trial Exhs. D-2 and D-3).

The distinctions between this case and *Jauch* are therefore clear and the Fifth Circuit's holding in *Jauch* does not support a finding that Sheriff Scott or Clay County violated Plaintiff's

---

[4] Sheriff Scott had no control or oversight responsibilities in regard to the attorney/client relationship, and there was no testimony that the Sheriff in any way prevented Plaintiff from communicating with his attorneys.

due process rights in this case. Moreover, Plaintiff had signed multiple criminal court documents indicating that he was aware of his October 10, 2012 trial date and further that if he failed to show up, he would be jailed and his bond revoked. (TT. 172-76; Trial Exhs. D-9 through D-14). In addition, unlike in the *Jauch* case, in Clay County, when a bench warrant is executed and a criminal defendant is in jail, he has a process to get before a circuit court judge, should his counsel make and notice such a request. Specifically, the criminal defendant or his counsel can file a motion and specifically request a hearing before the judge; Plaintiff was represented by counsel at all times during his incarceration and no such motion and notice were ever properly filed. (TT. 124-26).[5] Jauch had no similar process available to her and was denied her repeated requests to appear before a judge for bond setting. *Jauch*, 2017 WL 4783016, at *1. The *Jauch* case, on its face, thus involved far less due process being provided to criminal defendants and therefore is wholly distinguishable from the facts of this case and clearly does not support Plaintiff's claims.[6]

Furthermore, there is no proof that Sheriff Scott implemented an official policy, through his actions or otherwise, that caused any alleged constitutional violations nor is there any evidence of a persistent pattern of conduct by Sheriff Scott that caused any alleged constitutional violations. To the extent that Plaintiff's due process claim relates to the Clay County Sheriff's office's failure to bring him before Judge Coleman immediately upon his arrest (based on the word "instanter" appearing in the bench warrant), all the witnesses who testified in this case agreed, and the Court

---

[5] In any event, even if Plaintiff's counsel had filed and properly noticed such a motion, Judge Coleman specifically testified that the reason offered by Plaintiff for failing to appear would not have been sufficient to warrant his release from jail before trial. (TT. 134-35).

[6] As noted above, the process that the *Jauch* court found unconstitutional was when a criminal defendant is indicted and held without the opportunity for arraignment or bail for an indefinite time until the next term of court. *Jauch*, 2017 WL 4783016, at *5. Nothing of the sort occurred here - Plaintiff was represented by counsel, had been released on bond, and had options available to him to appear before Judge Coleman before the next term of court in January 2013 had an appearance been properly requested and noticed. (TT. 125-126; 135). Defendants' conduct did not violate Plaintiff's Fourteenth Amendment due process rights.

finds, that the bench warrant that Judge Coleman issued on September 9, 2012, simply required the sheriff's office to arrest Plaintiff and have him available for his trial date or when he was called for a court appearance; the Defendants had no control over or input into whether or when Plaintiff would be called for a court appearance – Plaintiff was represented by counsel and Defendants likewise had no control over or input into that relationship. Moreover, Judge Coleman, the issuer of the bench warrant, confirmed that by arresting Plaintiff and having him available for court, Sheriff Scott fully complied with the bench warrant. (TT. 134-35).[7] Indeed, the bench warrant here was only issued after Plaintiff failed to appear for the first day of the October 2012 criminal term of court, in plain violation of his bail agreement. (Trial Exhs. D-10, D-12, D-13). The court documents that Plaintiff signed stated clearly that he understood that the consequences of him failing to appear would be jail and revocation of his bond. (TT. 172-176; Trial Exhs. D-9 through D-14).

Indeed, absent out-of-term action by a criminal defendant's counsel, when a criminal defendant in Clay County is arrested pursuant to a bench warrant after failing to show for a court ordered appearance and forfeits his or her bond, their next opportunity to have their case before the judge is the next criminal term of court in Clay County; this procedure provides ample due process and does not run afoul of *Jauch* or any other Fifth Circuit authority. Here, Plaintiff's case was placed on the criminal docket for the January 2013 term of court in the Circuit Court of Clay County, and his case was then continued to the next term of court in April 2013 at the request of his newly appointed counsel for reasons that had nothing to do with Sheriff Scott or Clay County. Plaintiff cannot establish a due process violation under these circumstances - his own counsel

---

[7] Judge Coleman further confirmed that the excuse provided by Plaintiff for failing to appear for his October 10, 2012, trial date would not have been sufficient to allow for his release from jail even if Plaintiff's lawyer had filed and noticed an out-of-term motion on Plaintiff's behalf seeking his release pending trial. (TT. 124-25; 134-136).

requested or agreed to each of the three continuances (from January to April 2013, April to July 2013, and July to October 2013), and did not request or notice an out-of-term hearing before Judge Coleman.[8]

Finally, to the extent that Plaintiff claims that the Clay County Sheriff's office's failure to immediately file the return after execution of the bench warrant violated Plaintiff's due process rights, courts have consistently held that mere negligence does not create a constitutional claim, and there was no evidence presented to suggest that the Clay County Sheriff's office oversight regarding the filing of the return was anything other than mere harmless negligence. *Harris v. Harrison County, et al.*, 254 Fed. Appx. 410, 418-419 (5th Cir. 2007) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)); see *Daniels v. Williams* 474 U.S. 327, 330 (1986) (Constitution does not replace traditional tort law, due process not implicated by negligent act of official causing unintended loss of injury to life, liberty or property). Plaintiff has not shown that Sheriff Scott acted with willful intent or that he or anyone in his office failed to comply with a court order. Indeed, the testimony was undisputed that the late filing of the return was an oversight related to Sheriff's Office personnel being out on leave during the relevant time period. (TT. 203-204). In any event, there is no evidence that this administrative error caused or contributed to any delay in Plaintiff's case.

As for Sheriff Scott's assertion of the defense of qualified immunity, because the Plaintiff has alleged a violation of his clearly established constitutional right to due process, the Court must determine if Sheriff Scott's conduct was objectively unreasonable; if it was, he is not entitled to qualified immunity. The court finds, however, that Sheriff Scott's conduct was not objectively

---

[8] To the extent that Plaintiff himself attempted to file such motions on a *pro se* basis, Plaintiff's attempts were improper because he was represented by counsel and, in any event, he did not properly file or notice any of the purported motions for hearing before Judge Coleman. (TT. 135).

10

unreasonable and thus he is protected by qualified immunity. First, it is unrefuted that Sheriff Scott complied with the intent of Judge Coleman in the execution of the bench warrant at issue in the case. The warrant did not require the Sheriff to bring the Plaintiff to the court immediately, but rather required him to detain the Plaintiff and have him available when his case was called at the next term of court. (TT. 44-48, 54-55, 60, 122-23, 134-135). In addition, any missteps by the Clay County Sheriff's office in the filing of the bench warrant's return did not cause any delays whatsoever in Plaintiff's criminal case. Once the filing mistake was found, Sheriff Scott corrected it immediately; Plaintiff's case was in any event already included in the January 2013 criminal term of court, which was the next available term of court, and the late filing of the return did not delay Plaintiff's trial date in any way. Plaintiff was appropriately in jail pursuant to the bench warrant and, absent a properly filed and noticed request for hearing from him or his attorney outside the term, his next opportunity for his case to come before Judge Coleman was the January 2013 term of court. Under these circumstances, Plaintiff cannot establish that Sheriff Scott's actions were objectively unreasonable.

In sum, Plaintiff has not established his federal due process claims. Plaintiff was jailed after failing to show up for his October 2012 trial and he has not shown that Defendants engaged in any conduct that caused his continued incarceration or caused the continuances of his trial dates. The Clay County Sheriff's Department had no involvement in the criminal charges, appointment of counsel, or trial setting dates. In addition, it is undisputed that Plaintiff would not have been released from jail after failing to appear for his trial date for the reasons that he offered for his absence even had he been brought before the court. Under these circumstances, Plaintiff cannot establish that any constitutional violations by Sheriff Scott or Clay County took place and Plaintiff's due process claims are thus without merit.

### 4. Plaintiff's Speedy Trial Act Claim.

Criminal defendants have a federal constitutional right to a speedy trial pursuant to the Sixth Amendment. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L. Ed. 2d. 101 (1972). Plaintiff alleges that Sheriff Scott's failure to bring him before the Circuit Court of Clay County immediately upon his arrest creates liability for the Defendants under the Sixth Amendment. Plaintiff, however, has not and cannot establish that Sheriff Scott or Clay County are responsible for any delays in Plaintiff's trial date. The Clay County Sheriff's Department's only involvement in Plaintiff's criminal case was to execute a bench warrant for the arrest of Plaintiff that was issued a full year after his indictment and resulted from Plaintiff's failure to appear for trial in the criminal case.

Further, Plaintiff cannot establish that Sheriff Scott's conduct was objectively unreasonable relative to any delays in Plaintiff's criminal case. Plaintiff was arrested and appropriately jailed pursuant to a bench warrant due to his own failure to appear in court on October 9, 2012, the first day of that criminal term of court. His trial was set for the next day, October 10, 2012, and he failed to appear on that day as well. The State had witnesses subpoenaed and was ready to go forward with trial had Plaintiff shown up. (TT. 104-06; Trial Exh. D-17). Plaintiff himself therefore caused the initial delay in his trial date. Once jailed in November 2012 in Clay County, Plaintiff had a trial date during the January 2013 criminal term of court, which was the next term of circuit court in Clay County. Because of the appointment of a new public defender, Mark Cliett, in December 2012 and the difficulty that Cliett had in timely receiving Plaintiff's criminal file from the outgoing public defender, Jeff Hosford, Plaintiff's case was continued <u>at his counsel's request</u> until the April 2013 term of court. (TT. 184-85, 189-190). Neither Sheriff Scott nor Clay County had any input whatsoever into or control over this sequence

of events. Shortly before the April 2013 term, Cliett informed Plaintiff that he could not represent him due to a conflict of interest and Plaintiff was therefore immediately appointed new counsel, Austin Vollor. (TT. 189-90). From that point forward, Vollor participated in two voluntary continuances of Plaintiff's criminal case until the criminal case was ultimately dismissed in October 2013. (TT. 107-08; Trial Exhs. P-8, D-2, and D-3). Plaintiff has not shown that any conduct on the part of Sheriff Scott or Clay County supports a Sixth Amendment claim or that any of their conduct contributed to any delay in the adjudication of his criminal case; indeed, the proof leads to the opposite conclusion – any and all delay was caused by Plaintiff's public defenders, either through the filing of motions on Plaintiff's behalf to continue the case or through administrative delays in receiving case files; any communication or coordination issues that Plaintiff had with his attorneys was not the result of any conduct on the part of the Defendants, and Plaintiff did not offer evidence to the contrary.[9] Indeed, none of this conduct was within the purview of the Defendants and it had nothing to do with the Defendants. Accordingly, Plaintiff cannot show that Defendants had any involvement in any delay of Plaintiff's trial date. Any and all delay was a result of Plaintiff's and Plaintiff's counsel's actions.

Plaintiff's Sixth Amendment speedy trial claim against Sheriff Scott and Clay County will therefore be dismissed.

### 5. Plaintiff's State Law Negligence Claim.

Finally, Plaintiff alleges that Sheriff Scott was negligent under Mississippi law. (TT. 142-43). Any claims of negligence against Sheriff Scott are governed by the Mississippi Tort Claims Act (the "MTCA") and are barred by multiple provisions in the Act. Specifically, Plaintiff's state law negligence claims are barred under the MTCA pursuant to the police function exemption,

---

[9] In addition, it is self-evident that Plaintiff's incarceration was caused by his own failure to appear for trial in October 2012. He had been granted bail and was released pending his trial date.

MISS. CODE ANN. § 11-16-9(1)(c), and pursuant to the incarceration exemption, MISS. CODE ANN. § 11-46-9(1)(m).

First, Plaintiff's state law negligence claim is clearly barred by Miss. Code Ann. § 11-46-9(1)(m). Under Mississippi law, an exemption for the waiver of sovereign immunity exists if the defendants are government officials acting in the course and scope of their employment and the complainant was incarcerated at the time of the alleged acts. *Jones v. City of Jackson*, 203 F.3d 875, 881 (5th Cir. 2000); *Liggans v. Coahoma County*, 823 So. 2d 1152 (Miss. 2002); *Love v. Sunflower County*, 860 So. 2d 797 (Miss. 2003). Plaintiff was indisputably incarcerated at the time of events at issue and has not established any facts to show that Sheriff Scott was not acting in the course and scope of his employment. Plaintiff's state law negligence claim is thus clearly barred under this provision of the MTCA and should be dismissed.

In addition, the police protection exemption applies in this case. Miss. Code Ann. § 11-46-9(1)(c). Under this provision, law enforcement personnel engaged in the performance or execution of duties or activities relating to police protection are not liable unless they act with reckless disregard. The court finds, as previously discussed, that Sheriff Scott clearly did not act with reckless disregard in any way. "Reckless disregard usually is accompanied by a conscious indifference to the consequences, amounting almost to a willingness that harm should follow." *Willing v. Estate of Benz*, 958 So. 2d 1240, 1247 (Miss. App. 2007). Plaintiff offered no proof that Sheriff Scott acted intentionally with a conscious indifference to the consequences of his actions in any matters related to Plaintiff's case. The facts surrounding the sheriff's office's failure to file the return once the bench warrant was executed do not establish anything more than a harmless oversight and certainly do not rise to the level of reckless disregard. Accordingly, Plaintiff cannot establish the necessary proof to support a state law claim for negligence against Sheriff Scott.

It is therefore the finding and opinion of the Court that all of Plaintiff's claims against Defendants Clay County and Sheriff Scott are without merit in fact and law in their entirety and, as such, are hereby dismissed.

### C. Conclusion

Based on the foregoing authorities and analysis, the Court finds that the Plaintiff has not established his claims and that judgment shall therefore be entered in favor of the Defendants on all of the Plaintiff's claims. Thus, the Plaintiff is not entitled to any compensatory or equitable relief, and the Court rules in favor of the Defendants on all claims. Judgment is hereby entered in favor of the Defendants.

A judgment in accordance with this opinion shall issue this day.

THIS, the 20 day of November, 2017.

/s/ Glen H. Davidson
Senior United States District Judge